## The Atchison, Topeka & Santa Fé Railroad Co. v. William Yates.

RAILROAD STOCK LAW OF 1874; *Company not Required to Maintain a Hog-tight Fence, when.* In an action to recover damages from a railroad company for the killing of two hogs in a township where hogs are not permitted to run at large, and the findings of fact show that they were kept in an inclosed field surrounded by a hog-tight fence; that the company constructed and operated its road through the said field; that the hogs were killed within the limits of the field by the engine and trains of the company in the operation of the road; and that the road was not inclosed with a fence to prevent the animals in the field from getting on the road, *held*, that the company was not required to maintain a hog-proof fence in said township; and as the construction of a lawful fence would have been of no benefit to prevent such animals from being on the road, therefore the mere failure to inclose its track with a good and lawful fence, did not make the company liable to the owner of the animals killed.

### *Error from Douglas District Court.*

ACTION under chapter 94, laws of 1874, brought by *Yates* against the *Railroad Company*, to recover damages for killing two hogs belonging to plaintiff. Trial at the February Term, 1878, of the district court, when the court made the following findings of fact:

"I. The defendant [now plaintiff in error] was during the whole of the months of October and November, 1877, operating a line of railroad through Wakarusa township, in Douglas county, Kansas.

"II. That the line of defendant's railroad and its right of way runs through the field of plaintiff, in said township, which field is surrounded by a legal fence and which is hog-proof.

"III. That the defendant is a railroad corporation duly incorporated and organized under the laws of the state of Kansas.

"IV. That while plaintiff's [defendant in error] hogs were kept in the inclosed field during the months aforesaid, two hogs belonging to the plaintiff, of the value of thirty dollars, were killed by the engines and trains of defendant, and in the operation of its line of railroad.

"V. That said hogs were killed within the limits of said field.

"VI. That the line of defendant's railroad was not fenced at any place within said Wakarusa township.

"VII. That no demand was ever made upon any station or ticket agent of the defendant for the value of said hogs.

"VIII. That a demand was in proper time made upon the agent of the defendant whose duty it was to settle stock claims, and to whom all claims of this kind were referred for adjustment and settlement, and who had full power and authority to compromise, settle and pay such claims.

"IX. That on such demand being made, the defendant, by its said stock agent, refused to pay for the same, and still refuses so to do.

"X. That fifteen dollars is a reasonable attorney's fee for the prosecution of this suit.

"XI. That said hogs were not killed by any negligence of defendant, unless the failure to fence its track is negligence."

Judgment was rendered in favor of *Yates* upon the foregoing findings, and the *Railroad Company* brings the case here for review.

*Ross Burns, J. G. Waters,* and *W. C. Campbell,* for plaintiff in error:

Hogs are not permitted to run at large in Kansas, according to the provisions of art. 7, ch. 105, laws of 1868; and when swine do run at large, in violation of its provisions, the owner is liable for all damages which the owner or occupant of land upon which such swine trespass may sustain. The voters of a township may, however, exempt such township, at any township or general election, from the operation of this law; but, unless such exception is made to appear, the courts must declare the general provision in force, *i. e.,* that swine are not allowed rightfully to run at large. In this case, this court is bound to presume that the general law of the state was in force, and that Yates's hogs were wrongfully at large, for the reason that no proof was heard showing this exception to exist, or taking this case out of the general terms and provisions of the statute.

It will doubtless be claimed that Yates's hogs were not running at large; that they were in his field; that the field had a hog-tight fence. Now, it appears from the facts that Yates had a field which was surrounded with a proper fence; but the difficulty of the other side is here: The railroad track and right of way ran through this field; the company had to go through the field with its track, and was then in the lawful possession of its own premises; the hogs came on the right of way and track, and were killed; between the track and Yates's hogs there was no fence; and on these facts it must be argued by the defendant in error that, when a railroad company constructs its line of road through an inclosed field, the duty is upon it to build a fence, regardless of the statute.

We confidently assert that it cannot be successfully urged by Yates that his field, which surrounded and inclosed the track as well as the hogs, was an inclosure such as the law requires. The railroad company had obtained its right of way properly — whether by license, condemnation, or purchase, it matters not. The then owner must have obtained compensation for all the damages occasioned by such location; for the division of his land into two fields; the increased danger to' stock from having a railroad traverse a field where stock was confined; the cost of new fences to bar out the track and make the fence an inclosure, so that stock could not stray on the track — all these things must be taken to have been included in the condemnation or purchase money. Neither Yates nor any one else can claim, so far as the railroad is concerned, that a field is inclosed simply by fencing in his stock in common with the railroad track. Yates's hogs had no right whatever to come upon the track, nor to go anywhere off his premises, unless hogs were permitted to run at large in that township, which was not proved. The railroad company's right of way and track occupied the same relation to Yates that the unfenced farm of his neighbor did. The hogs could not have been in any inclosure at the time they were injured, because they were

killed on the premises of the railroad, and not on Yates's land.

This is about all there is of this case. It is too well settled in this state to admit of further argument, that hogs which are not allowed to run at large are trespassers when they leave the premises of the owner and stray on the railroad track; and whatever the fence of Yates may have been, he had no right or authority to fence up the track or inclose it, and the fence in question could not have been such a legal barrier to their coming on the track as is contemplated by the fence law of this state.

See the following laws and authorities: Sec. 1, ch. 40, Laws 1868; § 2, ch. 88, Laws 1873; ch. 95, Laws 1874; art. 7, ch. 105, Laws 1868; *Railway v. Rollins,* 5 Kas. 167, 178; *Larkin v. Taylor,* 5 Kas. 433–446; *Darling v. Rodgers,* 7 Kas. 592; *Bauer v. Clay,* 8 Kas. 585–597; *Wells v. Beal,* 9 Kas. 597–599; *Railroad v. Methven,* 21 Ohio St. 586; *Pitzner v. Shinnick,* 39 Wis. 129; *Munger v. Railroad,* 4 N. Y. 349; *C. B. U. P. R. R. v. Lea,* 20 Kas. 353; 12 Kas. 608; *Railroad v. Champ,* 75 Ill. 577; *Keech v. Railroad,* 17 Md. 32; *McDonnell v. Railroad,* 115 Mass. 564; *Perkins v. Railroad,* 29 Me. 307; *Curry v. Railroad,* 43 Wis. 665; *Giles v. Railroad,* 55 N. H. 552; *Railroad v. Miami Co. Infirmary,* 6 Cent. Law Jour. 436.

*William A. H. Harris,* for defendant in error:

The plaintiff in error sets forth in its brief substantially the facts as found in this case; and from that statement the district court found, as conclusions of law, the following, among others:

"1. That the hogs of plaintiff, in the inclosure through which the defendant's railroad runs, were not *running at large.*

"2. That where the railroad ran through the inclosure of plaintiff Yates, in which his hogs were, the defendant (now plaintiff in error) was bound to fence its track with such a fence as would prevent hogs from getting on its track."

These two conclusions of law contain the disputed points in the case, and may be stated as follows:

1. Are hogs, when inclosed by a hog-tight fence, which completely surrounds their owner's farm, (and on which farm they are being fed,) running at large within the meaning of the statute, when they are liable to or do get on the track and right of way of a railroad running through the center of such farm?

The facts as found by the court in this case seem to warrant the conclusion of law reached, especially when the accepted definition of the phrase "at large" is remembered. Webster defines this phrase as being, "without restraint or confinement." Now with this definition in view, it is impossible to claim that these hogs were running at large—the finding of the court being that they were killed in Yates's inclosure. As far as Yates's neighbors, and all parties except the railroad, are concerned, it will be conceded that these hogs were not running at large. But has the plaintiff in error, by right of its condemnation proceedings, acquired such rights as to preclude Yates or his stock from passing over the track of said company, from one side of his farm to the other, to do which he is of necessity compelled to pass over its right of way? We think not. It is well settled, that railroad companies by such condemnation proceedings acquire an easement only, and nothing more. But the opposing counsel maintain, that "the railroad company's right of way and track occupied the same relation to Yates that the unfenced farm of his neighbor did." This is indeed a startling proposition—that a man can go to the expense of inclosing his entire farm with a hog-proof fence, and after he has done so, a railroad company can have a right of way condemned through his farm, neglect to fence its right of way, deny his right to fence its track, and yet boldly assert that his cattle or hogs are "running at large" as soon as they come on its right of way. But it is also claimed that, in "the damages occasioned by such location, the owner of the premises must have received sufficient compensation for the division of his

land into two fields, increased danger to his stock, and cost of new fences to bar out the track," &c.—a violent presumption for even a railroad company. It is already well known in this state that the owners of land taken for railroad purposes rarely receive even the first value of the land actually taken, and in most cases the cost of fencing in the railroad track would exceed the entire amount received for the right of way. But if these hogs were "running at large," then it is impossible for any man through whose land a railroad runs to keep his stock or hogs confined without fencing in the railroad track at his own expense, when the statute has imposed and fixed that duty upon the railroad company itself, and provides a penalty for neglecting it. To say that the legislature intended to impose or place such a burden upon the farmers living on and cultivating farms and raising stock along the lines of railroads through this state, is simply absurd, the evident legislative intention being to protect stock, by compelling railroad companies to fence their tracks. "All such fences shall be substantially built, and sufficiently close to prevent stock from going through." (Sec. 2 as amended, Laws 1873, ch. 88, § 1.)

2. Is a railroad company bound under the statute to fence its track and right of way through an occupied and cultivated farm, where cattle and hogs are kept, so as to prevent them from getting on its track and being injured? The district court has decided this question in our favor, and we think rightly. Sections 1 and 5 of the railroad stock law of 1874 (pp. 143, 144, Laws 1874) are as follows:

"Sec. 1. Every railway company or corporation in this state, and every assignee or lessee of such company or corporation, shall be liable to pay the owner in full value of each and every animal killed, and all damages to each and every animal wounded by the engine or cars on such railway, or in any manner whatever, in operating such railway, irrespective of the fact as to whether such killing or wounding was caused by the negligence of such railway company or corporation, or the assignee or lessee thereof, or not.

"Sec. 5. That this act shall not apply to any railway company or corporation, or the assignee or lessee thereof, whose

road is inclosed with a good and lawful fence to prevent such animals from being on such road."

The term "animal," as used in the foregoing section, is well understood, and of necessity includes hogs as well as neat cattle or horses. The legislature has used various terms to distinguish the different kinds of animals which it intended to protect by the laws regulating fences. We submit that using the term "animals," instead of cattle, or hogs, or of referring to either class particularly, shows the evident intention of embracing all classes within the one *word*, and that the word "animals," as used, necessarily includes hogs, as well as cattle or horses.

Now § 5 says that § 1 shall not apply to any railway or corporation, or lessee thereof, whose road is inclosed with a good and lawful fence to prevent such animals from being on the track, evidently designing to protect *all animals* from the danger consequent to the proximity of a line of railway. The size and character of the fence requisite to relieve railroads from liability under § 1 is not given, but the 5th section declares it "shall be a good and lawful fence to prevent such animals from being on such road," virtually saying that the sufficiency of such a fence shall be determined by its preventing such animals from being on the track.

If we are right in our construction of these two sections, then there can be no doubt as to our right to recover. The latest decision on §§ 1 and 5, contained in the 18th and 20th volumes of our state reports, refer more particularly to the question of contributory negligence, but we fail to see how that question can arise in this case. The defendant in error has certainly not been guilty of negligence, for the reason that the statute compels railroad companies to fence their track with "a good and lawful fence, so as to prevent such animals from being on such road," and their neglect to comply with the provision of the statute lays upon them the irremovable burden of negligence. (*Hopkins v. K. P. Rly. Co.*, 18 Kas. 462.)

It will be conceded that while Yates's hogs were on his

own premises, and inclosed with a hog-tight fence, no law was violated; that his fence prevented his hogs from trespassing upon the crops or lands of his neighbors, and confined them to his own premises — which was all the law required of him. Wherein, then, has he been negligent or careless? The hogs sued for were killed within this inclosure, and had the railroad company obeyed the law, as set forth in said § 5, no damage could have resulted, because its fence would have "prevented such animals from being on such road," and this, we submit, is the protection afforded those who raise and feed stock in this state, where their farms are intersected by a railroad. The legislature had also in view the further and more important object, viz., the protection of the lives and property of those using the railroad; and taking this into consideration, we claim that the law makes it imperative upon the companies to fence their tracks against that class of animals illegally at large, as well as those legally at large.

The case of *C. B. R. R. Co. v. Lea*, 20 Kas. 353, is decided on the ground that both parties were violating the law, and consequently this court refused to apportion damages between mutual wrong-doers, but in the case at bar it cannot be claimed that the hogs sued for were violating any law.

The opinion of the court was delivered by

HORTON, C. J.: The learned judge in the court below mistook the law in reference to this case, in rendering judgment on his findings of fact against the railroad company. The stock law of 1874, exempting railroad companies from its conditions when their roads are inclosed with a good and lawful fence, is to be construed in connection with the fence law in force. In other words, railroad companies are not required to build different fences from other parties. The fence spoken of in the stock law is no different or more expensive a structure than that mentioned in the general law defining a legal and sufficient fence. (Gen. Stat., ch. 40, § 2.) In townships where hogs are permitted to run at large,

the bottom rail, board or plank of which the fence is composed shall not be more than six inches from the ground; in other townships it shall not be more than two feet. In the law there is no prohibition against building fences of rails or lumber, and when constructed of this material, as required by the law, they are lawful fences. There is no finding to show that in Wakarusa township swine were allowed to run at large. The general law of the state is, that they shall not run at large. Assuming the general law of the state was in force, then the railroad company, in any event, was only bound to build a fence through the inclosure of Yates, with the bottom rail, board or plank not more than two feet from the ground. (Laws 1873, ch. 88, § 1.) Such a fence would not have prevented the hogs killed from being on the road; indeed, the fence thus constructed, and being within all the requirements of the law a good and lawful fence, would have in no respect been of any benefit to the proprietor of the land, so far as keeping his hogs from the track. Then, if such a fence was useless and unnecessary so far as this case is concerned, can it be logically said that the company ought to have built its fence? or that from its failure to construct a fence which would not keep the animals killed from going upon the road, it was liable under the law of 1874? We answer, no. The building of a dozen, or any other number of fences of the character required by law in Wakarusa township, would have afforded no protection to the defendant in error, and he has no serious complaint of their absence. As a lawful fence could not have prevented the injury, and would not have protected the railroad track from the swine, so no obligation existed to erect it. The failure to erect the fence may be laid aside as having no bearing on the case.

We conclude that the company was rightfully in the field with its road and cars; that it was not bound to do a useless or an unnecessary act; that therefore, as to hogs, it was not bound to maintain a fence. As the findings show they were not killed by any negligence, unless the failure to fence the track was negligence, the company was not liable.

The judgment will be reversed, and the case remanded with the direction that judgment be entered upon the findings of fact for the plaintiff in error.

All the Justices concurring.

