The Leavenworth, Topeka & Southwestern Railway Company v. W. J. Forbes.

37 445
40 469
37 445
41 758

1. RAILROAD, UNFENCED; *Hogs Killed; Erroneous Instructions.* In an action for damages for the killing of hogs in the operation of a railroad, when it is admitted that the railroad was not fenced where the injury occurred, and in a township where hogs were prohibited from running at large, and that even if the railroad had been inclosed with a fence constructed as designated by §2 of the fence law, said fence would not have prevented said hogs from going upon defendant's right-of-way, *held,* that under said admissions it was error to instruct the jury to find for the plaintiff unless they found that he contributed negligently to the injury; and *further held,* that under the admissions it was immaterial whether the said railroad was fenced or not.

2. NEGLIGENCE—*Recovery by Plaintiff, When.* Where the jury found that the injury occurred by the negligence of the railroad company and its employés in the management of its train, and that by the exercise of ordinary care and prudence they could have prevented said injury, *held,* that the plaintiff was entitled to recover unless by his own negligence he directly contributed or caused the injury; and the fact that the plaintiff kept his hogs in an insecure inclosure and thereby permitted them to escape and go upon defendant's railroad, would not be such negligence as to prevent his recovery.

3. JUDGMENT *by Default—Appeal, not Prevented.* Where an action is brought before a justice of the peace, and the defendant makes no appearance, but permits judgment to be rendered in his absence, he is not thereby prohibited from taking an appeal to the district court; and §114 of the justices code only provides an additional remedy.

*Error from Leavenworth District Court.*

ACTION brought by *W. J. Forbes*, in a justice's court, to re-
cover the value of certain hogs killed by the defendant com-
pany in the operation of its railway. The defendant made
default, and judgment was rendered for the plaintiff for $60
and costs. The defendant appealed to the district court. In
that court the plaintiff made a special appearance, and moved
to dismiss the appeal for the reason that the judgment was
rendered on default in the justice's court, and said defendant
did not proceed under §114 of the justices code to have the
judgment set aside and to be let in to defend; which motion
was by the court overruled, and excepted to by the plaintiff.
The facts as shown by the evidence are substantially as fol-
lows: Plaintiff was the owner of about forty head of hogs,
and lived near the line of defendant's railway, in Tonganoxie
township, Leavenworth county, Kansas; that on the morning
of the injury these hogs were in an inclosure where they had
been kept during months previous; that sometime in the
morning they broke out by making a hole through the fence,
and wandered upon a neighboring farm, through which the
defendant's railway runs; that about 10 o'clock in the fore-
noon, the west-bound train on defendant's road ran over and
killed seven or eight of the hogs, of the value of $60. It is
conceded that hogs were prohibited from running at large in
said township, and that the defendant's railway was not fenced
where the injury occurred. Trial by jury, at the December
Term, 1885, and judgment for plaintiff for $60 and costs.
The defendant brings the case here. The defendant in error
has filed a cross-petition on the overruling of his motion to
dismiss the defendant's appeal to the district court.

*Geo. R. Peck, A. A. Hurd,* and *J. G. Egan,* for plaintiff
in error.

*Lucien Baker,* for defendant in error.

Opinion by CLOGSTON, C.: The plaintiff in error assigns but two errors for review: First, that the court erred in refusing to give the instructions asked by the defendant; second, that the special findings of fact are not sustained by the evidence. The special instructions asked by the defendant are as follows:

"1. In townships where hogs are not by law permitted to run at large, a legal and sufficient fence may have its lower rail, board or plank two feet from the ground.

"2. If a legal and sufficient fence as just defined inclosing the defendant's railway in and through the township in which plaintiff's hogs were killed, as shown by the testimony in this action, would not have prevented said hogs or any of them from going to, on or over the track of said railway at the place where they were killed, then no recovery in favor of plaintiff can be based wholly or partly on any failure to fence said railway.

"3. Hogs which have escaped from their owner or keeper by breaking through his inclosure or otherwise, and which are roaming on the highway or trespassing on the lands of another, are running at large within the meaning of § 46 of chapter 105 of the General Statutes of Kansas.

"4. If you find that plaintiff's hogs, for the killing of which this action is brought, were killed while running at large in a township where the voters had not voted to be exempt from the operations of § 46 of chapter 105 of the General Statutes of Kansas, then you should find for the defendant, unless you further find that said hogs were at large without fault or negligence of plaintiff.

"5. In a township where hogs are by law prohibited from running at large, it is the duty of those who keep hogs in a field or pen to inclose them with such a fence or barrier as will prevent their escape. If in such township they have escaped by breaking through or getting over the fence with which they were inclosed, such escape will be presumed to have been by reason of the fault or negligence of the person assuming to keep them, unless it is proven that such fence was so constructed and kept in repair that such breaking through or getting over could not have been reasonably anticipated from the condition of the fence and the size, activity, natural inclinations and known character of the hogs so escaping.

"6. The rules of law as to diligence and negligence apply to stock-owners as well as to railway companies. Hence if hogs were prohibited by law from running at large in the township where plaintiff's hogs were kept by him, and were killed by the defendant's railway train, the law required from the plaintiff the same degree of diligence to keep his hogs from escaping that it required from the railway company to avoid killing them when they got in front of its train; and if the plaintiff failed to use that degree of diligence to keep his hogs from escaping he cannot recover in this action."

We concede that instructions one, two, five and six state the law applicable to this case, and know of no reason why the court should not have given them to the jury. Instructions five and six we think were substantially given in the general charge by the court. As to instruction four, it assumes that the defendant would not be liable if the hogs in question were running at large as contemplated by § 46 of chapter 105 of the General Statutes of Kansas, even if killed by the negligence of the defendant. Had the railway added to this instruction its liability for its acts if negligently or willfully done, then the instruction would have been applicable to this case. (*Central Branch Rld. Co. v. Lea*, 20 Kas. 353.) This is also substantially the defect in instruction three, refused. The fact that hogs are found at large in a township where they are prohibited by law from running at large, is not conclusive evidence that they are trespassers as contemplated by § 46; it depends upon how they came to be at large. If by the deliberate or negligent acts of the owner, then they are to be considered as running at large; but if by accident, without fault of the owner, then they are not running at large as contemplated by said section. Instructions three and four, if given, would have relieved the defendant of all liability had the hogs been at large as trespassers, or at large by the fault of their owner, notwithstanding the fact that the injury occurred by the negligence or the wanton acts of the defendant or its employés. This is not the law applicable to this case, and therefore the instructions were properly refused. (See *Mo. Pac. Rly. Co. v. Roads*, 33 Kas. 640; *Mo. Pac. Rly. Co.*

*v. Bradshaw*, 33 id. 533; *A. T. & S. F. Rld. Co. v. Shaft*, 33 id. 527.)

The next question is, was the refusal of the court to give the instructions that were proper and ought to have been given such error, under the facts of this case, as to warrant a reversal of this action. This action was tried and the jury instructed upon two theories: First, that the injury occurred by the negligence of the defendant, its agents and employés, in the management and operation of its trains, and by the exercise of ordinary prudence and care the injury could have been prevented; second, that the hogs were at large without fault of the plaintiff, and that the defendant's railway was not fenced at the place where the injury occurred. The jury was asked to find upon the first of these propositions, and their answer thereto was as follows:

"Did the defendant and its servants and agents negligently run its engine and cars into and upon the hogs of the plaintiff? A. Yes.

"Could the defendant and its servants and agents, by the exercise of ordinary prudence and care, have prevented the killing of plaintiff's hogs after they came upon its track? A. Yes."

Upon these findings of fact it is clear that the jury found against the defendant on the first proposition; that is, they found that the injury occurred by the negligence of the defendant and its employés, and that by the use of ordinary prudence and care the injury could have been prevented. If these findings were sustained by the evidence, that does away with all the other questions in this case. It then could make no difference how the hogs came to be at large— whether they broke out of a lawful inclosure without fault of the defendant, or were kept in an insufficient inclosure and by the negligence of the plaintiff became at large; the injury occurred by the company's negligence, and this would make it liable. Under these findings, if the instructions asked for by the defendant had been given, the verdict would have been the same. Counsel, however, insist that the findings were not sustained by the

evidence; but in this we think counsel are mistaken. The evidence of the witnesses for the defendant alone would justify the jury in the findings. The first witness called by the defendant was its section foreman of that section where the injury occurred. He testified that the hogs could have been seen by the employés on the train for 700 or 800 feet before they reached the point where the injury occurred. The engineer who was in charge of the engine testified that he saw the hogs upon the track when 250 feet away from the point where they were run over; that he made no effort to check or stop the train; that the hogs when he first discovered them were running on the track away from the engine; that a part of them left the track, and a few continued to run on the track; he whistled and opened the cylinder cocks, supposing the hogs would leave the track. The fireman who was firing on the engine testified that he saw the hogs when the engine was a quarter of a mile east of the place of injury, and the hogs were on the track; that the engineer whistled and let off steam, but made no effort to stop the train; that the train could have been stopped in a distance of 150 or 200 feet. This evidence alone was sufficient to show negligence. The hogs were running west on the track when discovered by the engineer; they were in a cut, running toward the west end of it; part of the hogs were on the track, and others were on each side. He could have stopped the train before reaching the hogs, and thereby have prevented the injury. It is no excuse for him to say that he thought the hogs would leave the track; they were on the track, and some of them continued to remain on the track, and yet no effort was made to stop the train.

Counsel insist that the general charge given by the court to the jury did not state the law of this case as established by this court. The instruction referred to by counsel is as follows:

"Now, on the other side, it is claimed by the defendant in this case that there was what is called a hog law in force in this township referred to. It is said to have been an order of the board of county commissioners, properly published, prohibiting or directing that hogs should not be allowed to run at large in this county. If such was the action of the county

board, that would be effective on that subject, and hogs running at large would be conclusive evidence that they were running at large contrary to law; but although that may have been conclusive evidence that these hogs were unlawfully running at large, with reference to that order of the board of county commissioners, yet unless the road of the company was inclosed with a good and lawful fence to prevent an animal from going on the railroad track, and they were killed by the railroad, the company would nevertheless be liable."

This instruction does not correctly state the law. A railroad is only bound to fence its track with a lawful fence, and in townships where hogs are not permitted to run at large is only required to construct the fence provided for by § 2, ch. 40, of the Comp. Laws of 1885, which provides that the "bottom rail, board or plank shall not be more than two feet from the ground." A lawful fence may or may not be sufficient to prevent hogs from going upon the track. A lawful fence might prevent large hogs and not small ones from going through it. The burden of proof to establish this rests upon the railroad company, and in this case it was conceded that a lawful fence, or a fence with the bottom rail, plank or board two feet from the ground, would not have prevented the hogs from going upon the defendant's track. This being true, it then made no difference in this case whether the defendant's road was fenced with a lawful fence or not. (*A. T. & S. F. Rld. Co. v. Yates,* 21 Kas. 613; *Mo. Pac. Rly. Co. v. Bradshaw,* 33 id. 533; *Central Branch Rld. Co. v. Lea,* 20 id. 353.) The trial court evidently understood the law to be that the fence contemplated must be so constructed as to prevent all animals from going upon the railroad track, and so in substance instructed the jury. We do not so understand the law; but in answer to this objection we suggest to counsel that the record fails to show any objections or exceptions taken to the giving of said instruction, and in fact we cannot see how it would help the defendant even if the exception had been saved; for if the court gave the jury a wrong construction of the law upon this branch of the case, and yet correctly gave the law upon the first proposition, that the damage was caused by the

negligent act of the defendant in the operation and running of the train, without fault of the plaintiff, and the jury found for the plaintiff upon this branch of the case, then it was immaterial even if the court wrongly instructed the jury on the other branch that counsel complain of.

The cross-petition of the defendant in error presents but the one question: Will an appeal lie from the final judgment of a justice of the peace, where the defendant makes default and permits judgment to be rendered in his absence? Appeals are regulated by the statute. Section 120 of the code of procedure before justices of the peace reads:

"In all cases not otherwise specially provided for by law, either party may appeal from the final judgment of any justice of the peace to the district court of the county where the judgment was rendered."

And §132 is as follows:

"An appeal may be taken from the final judgment of a justice of the peace in any case except in cases hereinafter stated, in which no appeal shall be allowed: *First*, On judgments rendered on confession. *Second*, In jury trials where neither party claims, in his bill of particulars, a sum exceeding twenty dollars."

Then, by the direct terms of this statute, an appeal may be taken from a judgment not prescribed by statute; and judgments taken on default, or in the absence of a party, are not within the exception. Defendant, however, insists that §114 of the justices act provides a complete remedy whereby judgments rendered in the absence of a party may be opened up, and the defendant let in to defend. This is true; ample provision is there made, but the statute does not pretend to make that rule an exclusive one. It simply provides an additional remedy, which may be pursued at the option of the party; and after that remedy has been pursued, a party would still have the right of appeal. Many cases might arise in which an application under §114 would work great hardship. Affidavit must be made in that case by the party himself. Judgments are rendered frequently in the absence of parties, where it would be impossible to make the application in person, under

said section; but an appeal may be taken without the presence of the party, it not being necessary that he should sign the appeal bond. This all may be done in his absence. We are well aware that some states apparently have decided this question the other way. In 7 Neb. 474, and 12 Neb. 52, founded upon a statute similar to our own, it was decided that an appeal would not lie from such a judgment. In *Brayling v. County of Delaware*, 16 Iowa, 44, which was an application to strike from the files an answer filed in the district court after an appeal had been taken from the justice of the peace, the court held that, as the defendant was in default for an answer in the justice's court, before he could answer in the district court he would have to purge himself; but it did not hold that an appeal would not lie. In 5 Ore. 438, cited; this was a case founded upon a statute which provides that no appeal shall lie in cases where default was had in the justice's court. On the other hand, in *Butler v. Heeb*, 38 Iowa, 429, it was held that an appeal would lie from the judgment of the justice of the peace rendered on default; also in *Lauferty v. Prickett*, 50 Ind. 24, and *Hallock v. Jaudin*, 34 Cal. 167. The court committed no error in overruling defendant's motion to dismiss the appeal.

It is recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.