BALL RANCH CO., RESPONDENT, *v.* HENDRICKSON ET AL., APPELLANTS.

(No. 3,451.)

(Submitted January 7, 1915. Decided January 30, 1915.)

[146 Pac. 278.]

*Animals—Running at Large—Statutes—Negligence—Jury Question—Pleading and Proof—Liability of Wrongdoer—Measure of Damages.*

Animals—Running at Large—Pleading and Proof.
  1. In an action for damages claimed to have been caused by defendant's neglect of duty imposed by sections 1881 and 1883, Revised Codes, not to permit rams to run at large at certain seasons of the year, plaintiff must plead nonobservance of the statute and make a case bringing the defendant within the liability created thereby.
    [As to liability of owners for damages resulting from animals, see note in 36 Am. St. Rep. 831.]

Same—Simple and Statutory Negligence—Liability.
    2.  Where simple negligence is relied on as a basis of recovery of damages caused by permitting animals of the character referred to above to run at large, the plaintiff must prove, by a preponderance of the evidence, the negligence alleged, the defendant being held to the exercise of ordinary care only; where, however, the damages are alleged to spring from noncompliance with the duty imposed by section 1881, Revised Codes, disobedience in this respect constitutes negligence *per se* and makes defendant liable, if the injury was proximately caused thereby.

    [Liability for injuries by and to animals, see notes in 16 Am. St. Rep. 631; 36 Am. St. Rep. 831.]

Same.
    3.  *Held,* that where rams run at large without the tacit consent of the persons in control, or such persons make a reasonable effort to hinder or prevent them from running at large, no offense is committed, and no liability is incurred either under sections 1881–1883, Revised Codes, or in an action based upon simple negligence.

Same—Negligence—Jury Question.
    4.  Evidence reviewed and *held* to be insufficient to warrant the trial court in determining as a matter of law, and peremptorily instructing the jury, that defendants were guilty of negligence in permitting rams to stray away.

Same—Measure of Damages.
    5.  In an action for negligence, in permitting rams to stray away and to get into plaintiff's band of ewes, causing them to become pregnant and to lamb at a time of the year when it was impossible to keep either the ewes or the lambs, the measure of damages was the market value of the ewes at the time of the wrong, with interest from that time in the discretion of the jury; hence evidence of the value of the lambs which died was inadmissible.

*Appeal from District Court, Custer County; Sydney Sanner, Judge.*

ACTION by the Ball Ranch Company against Martin Hendrickson and another.  Judgment for plaintiff, and defendants appeal from it and an order denying them a new trial.  Reversed and remanded.

*Messrs. Loud, Collins, Brown, Campbell & Wood,* for Appellant, submitted a brief; *Mr. Chas. S. Loud* argued the cause orally.

The gist and substance of this action as disclosed by the allegations of the complaint is the injury inflicted upon the property of the respondent by the alleged negligence of the appellants.  The damages, if any were sustained, were caused to the

ewes, and the proper element of damage would have been the value of the ewes before and after the injuries complained of. (*Stearns* v. *McGinty,* 55 Hun, 101, 8 N. Y. Supp. 216; *Crawford* v. *Williams,* 48 Iowa, 247.)

It is apparent from the pleadings and from the proof introduced in support thereof, that plaintiff could not have successfully maintained an action based on the provisions of sections 1881 and 1883, Revised Codes, upon the facts appearing in evidence. There is absolutely no proof in the record that these bucks were permitted to run at large or that they were running at large within the meaning of the statute. It has been held that animals which escape from an inclosure in which they have been placed for the purpose of confining them and which the owner when he learns of their escape endeavors to recover cannot be regarded as animals running at large within the meaning of the statutes. (*Stephenson* v. *Ferguson,* 4 Ind. App. 230, 30 N. E. 714; *Keeney* v. *Oregon R. & N. Co.,* 19 Or. 291, 24 Pac. 233.) And it was held by the Kansas supreme court in *Leavenworth T. & S. W. Ry. Co.* v. *Forbes,* 37 Kan. 445, 15 Pac. 595, that the fact that hogs are found at large in a township where they are prohibited by law from running at large, is not conclusive evidence that they are trespassers. It depends upon how they came to be at large. If by the deliberate or negligent acts of the owner, then they are to be considered as running at large; but if by accident without fault of the owner, then they are not running at large as contemplated by the law. To the same effect we cite: *Wolf* v. *Nicholson,* 1 Ind. App. 222, 27 N. E. 505; *McBride* v. *Hicklin,* 124 Ind. 499, 24 N. E. 755; *Rutter* v. *Henry,* 46 Ohio St. 272, 20 N. E. 334; *Briscoe* v. *Alfrey,* 61 Ark. 196, 54 Am. St. Rep. 203, 30 L. R. A. 607, 32 S. W. 505; *Thompson* v. *Corpstein,* 52 Cal. 653. The burden of proof is upon plaintiff in actions for negligence; the law will not presume it for him. (*McCully* v. *Clarke,* 40 Pa. 399, 80 Am. Dec. 584; *Horstick* v. *Dunkle,* 145 Pa. 220, 27 Am. St. Rep. 685, 23 Atl. 378; *Pennsylvania Canal Co.* v. *Bentley,* 66 Pa. 30.) The respondent in its complaint has alleged negligence on the part

of the appellants, their servants and agents, but has absolutely failed to introduce any proof whatsoever establishing or tending to establish any negligence in the handling of these bucks.

*Mr. Geo. W. Farr* and *Mr. H. E. Herrick,* for Respondent, submitted a brief; *Mr. Farr* argued the cause orally.

Plaintiff does not base its recovery upon the statutes. This action is for damages for negligence and breach of defendants' positive duty and obligation to keep their bucks from straying from their band, and their implied promise to pay any damages incurred.

Defendants cite some cases in support of the contention that the words "at large" do not have reference to an escape of animals from an inclosure or from restraint, but rather covers cases where animals are permitted to roam at will without an effort of restraint. We submit that the words "permit the same to run at large" as used in the statute mean stock not under control of the owner or under the care of a shepherd or herdsman whatever may have been the original cause for their being at large. In other words, it is immaterial that they may have been under restraint at one time; if they are running loose, not under control, they are at large. (*Hinman* v. *Chicago R. I. P. Ry. Co.,* 28 Iowa, 491; *Inman* v. *Chicago M. & St. P. R. Co.,* 60 Iowa, 459, 15 N. W. 286; *Hammond* v. *Chicago N. W. R. Co.,* 43 Iowa, 168; *Russell* v. *Cone,* 46 Vt. 600; *Wright* v. *Clark,* 50 Vt. 130, 28 Am. Rep. 496.)

Where a herd of cattle being herded by a boy were left by him while he returned to his father's house, about a half a mile distant; when another boy went to take charge of them, during his absence some of the cattle strayed away from the others, it was held that these cattle wandered at large during the interval between the first boy leaving them and the return of the second. (*Valleau* v. *Chicago M. & St. P. Ry.,* 73 Iowa, 723, 36 N. W. 760.) A colt that escaped from its owner while being conducted across depot grounds and strayed upon the track is regarded as "running at large" within the meaning of

the statute requiring railroad companies to fence against live-stock running at large. (*Smith* v. *Kansas City St. J. & B. R. Co.*, 58 Iowa, 622, 12 N. W. 619.)

We believe that under our statute any person who "permits," whether willfully, carelessly, negligently or otherwise, any ram which is running in a herd to become separated from the band and to roam at will over the range, is "permitting" the ram to run at large within the meaning of the statute.

Appellants did not offer any instructions on the question of damages or the measure thereof. The record is silent as to what, if any, instructions the defendants did offer; their offered instructions not being made a part of the record. Before they can complain of an instruction because not as specific as it should have been, it was their duty to offer one not containing that defect. (*Kirk* v. *Smith*, 48 Mont. 489, 138 Pac. 1088; *Frederick* v. *Hale*, 42 Mont. 153, 112 Pac. 70; *Hollenback* v. *Stone & Webster E. Corp.*, 46 Mont. 559, 129 Pac. 1058.)

HON. JOHN B. McCLERNAN, a Judge of the Second Judicial District, sitting in place of MR. JUSTICE SANNER, disqualified, delivered the opinion of the court.

This action was commenced by plaintiff and respondent to recover damages against the defendants and appellants for injuries to plaintiff by reason of the death of ewe sheep and lambs, alleged to have been caused by the negligence of the defendants. The charging part of the complaint, or as much thereof as is necessary for a proper understanding of the case, is as follows: "That on or about the 24th day of September, 1911, the defendants negligently and carelessly, through their agents, servants, and employees, permitted said buck sheep to stray away from the band and herd in which they theretofore had been kept, without anyone in charge or control of said buck sheep, and said buck sheep then got into the band of ewes belonging to the plaintiffs, covering and breeding a great number thereof, and as a result of which a great many of said ewe sheep, to-wit, about 260 head or more thereof, then became preg-

nant with lamb; that the causing of said ewe sheep to become pregnant with lamb at that season of the year caused great damage to said sheep and to the plaintiff, in that the ewe sheep were delivered of lambs at a time of the year when, in Montana, it was impossible to keep either the said ewes themselves or the lambs dropped by them alive''; and that all of said lambs and 200 head of mother ewes died in consequence thereof, all to plaintiff's damage in the sum of $1,500. Defendants, by their answer, denied, among other things, all allegations of negligence and damage, and alleged, affirmatively, contributory negligence on the part of plaintiff. All affirmative matter was replied to. The action was tried by court and jury, and a verdict found and returned for plaintiff for the sum of $800, upon which verdict judgment was duly entered. This is an appeal from the judgment and from an order denying defendants a new trial. The defendants at the trial introduced no evidence, but presented motions for nonsuit and directed verdict, which were denied.

Counsel for respondent in their brief say: ''Plaintiff does not base its recovery upon the statutes. This action is for damages for negligence and breach of defendants' positive duty and obligation to keep their bucks from straying from their band, and their implied promise to pay any damages incurred.'' It will be noticed, also, that no attempt has been made to bring the action within the provisions of either section 1881 or 1883 of the Revised Codes.

''In an action for the neglect of a statutory duty, the plaintiff must allege that the defendant neglected a duty imposed by statute,'' *etc.* He must make a case bringing the defendant within the liability created by the statute, and the proof must conform to the pleading. (Ency. of Pl. & Pr., p. 336, treating the subject of Negligence.) It is necessary to bear this in mind in considering questions hereinafter treated, especially some instructions of the court complained of by appellants. For, if this case is treated as one of simple negligence, then it will be controlled by rules generally governing in such cases; that is, the plaintiff must prove, by a preponderance of the evi-

[1, 2]

dence, the negligence alleged, and the defendants would be held to the exercise of ordinary care only. If, however, the plaintiff can avail itself of the statutes, under the pleadings and evidence in this case, then a different rule prevails. "The necessity for his compliance with the command of the legislature becomes imperative, and any failure on his part to observe the required precautions * * * is such a breach of duty as will render him liable for any injury caused by his disobedience." (*Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.) This court, in the same case (*Monson* v. *La France Copper Co.*, supra), cited, with evident approval, Mr. Labatt in his work on Master and Servant, in which he says, after referring to the fact that many courts hold such disobedience negligence *per se*, while others hold it to be merely evidence of culpability: "That the former of these theories is the correct one can scarcely be doubted. A doctrine, the essential effect of which is that the quality of an act which the legislature has prescribed or forbidden becomes an open question upon which juries are entitled to express an opinion, would seem to be highly anomalous. The command or prohibition of a permanent body which represents an entire community ought in any reasonable view be regarded as equivalent to a final judgment upon the subject matter, which renders it both unnecessary and improper that this question should be submitted to a jury."

But, before these rules can be applied, it must be shown that the defendant was guilty of some violation or disobedience of the provisions, or some provision, of the statute invoked, and that the injury was proximately caused by such violation or disobedience. (*Monson* v. *La France Copper Co.*, supra, and cases there cited.) Some stress is laid on this feature of the case because counsel for respondent evidently attempt to invoke the provisions of section 1881 of the Revised Codes in justification of the instructions referred to, notwithstanding the condition of the pleadings and the evidence and their own admissions hereinbefore referred to.

The first error complained of by appellants which we shall notice, because we consider it the most serious question in the case, is the giving of two certain instructions, as follows, to-wit:

Instruction No. 3: "The jury is instructed that a person having the possession and control of a band of buck sheep are presumed to keep all of the buck sheep together in the band or under control, and, if any of the buck sheep get out of the band and stray away and get with ewe sheep, it is then presumed that the persons in charge of the buck band carelessly and negligently permitted them to get away, and the duty devolves upon such persons to produce evidence tending to show that there was no such negligence."

Instruction No. 4: "The jury are instructed that the defendants in their answer having admitted the escape of 84 head of buck sheep from the buck band in their control, and the mixing of said bucks with plaintiff's ewe sheep, it became the duty of the defendants to present evidence tending to show that the escape of said bucks was without their fault or negligence, and, not having offered any such kind of testimony, such fault or negligence will be presumed, and your verdict will be for the plaintiff for such damages as you find that it has sustained in consequence thereof."

The instructions are in effect peremptory instructions to find for plaintiff. Upon what theory they were given we are not [3] informed. If upon the theory that negligence *per se* had been shown by reason of a violation of the provisions of section 1881, *supra,* then we must say that the pleadings, evidence, and admissions of counsel do not justify them.

In view of the pleadings, evidence and admissions referred to, this feature of the case might, with propriety, we think, be passed without further notice; but, as counsel on both sides have argued at length concerning that feature, it might be well for this court at this time to give expression to its views concerning section 1881, *supra,* and its applicability to the present case. We have already said the plaintiff is in no position to take advantage of its provisions for the purpose of invoking rules of law

which only apply in case of violation of those provisions, if properly pleaded and proved.

Section 1881 is as follows: "It is unlawful for any owner or person having the management or control of any ram or he-goat to permit the same to run at large between the first day of August and the first day of December of each year." Section 1882 provides a penalty for violation of the provisions of section 1881. To permit the ram or he-goat to run at large constitutes the offense under the statute, and not alone the running at large. The chief difficulty encountered in construing the statute seems to be in determining the proper definition of the word "permit," as used therein. "The language [of a statute] is to be understood in its usual and ordinary significance." (*Osterholm* v. *Boston & Mont. C. C. & S. Min. Co.*, 40 Mont. 508, 528, 107 Pac. 499, 505.) Webster's definition of the word "permit" is: "To allow by tacit consent, or by not hindering; take no steps to prevent; consent tacitly to." Other judicial definitions to the same effect can be found in Words and Phrases, some of which are: "To allow by not prohibiting." "Permit means not to prohibit or prevent." These definitions, we believe, show the usual and ordinary significance of the word "permit." Accepting them as correct, we are forced to the conclusion that if a ram or he-goat run at large without the tacit consent of those in control, or if those in control make a reasonable effort to hinder or prevent such animals from running at large, then no offense has been committed under the statute.

Some of the same elements must necessarily enter into this case based upon simple negligence, for the complaint charges that the defendants "permitted said buck sheep to stray away," *etc.* To "run at large," we believe, involves the idea of voluntary, careless, negligent, or faulty action or omission on the part of those having the animals in charge. Whether or not in this instance the bucks of the defendants were running at large depends upon the facts. (*Presnall* v. *Raley* (Tex. Civ. App.), 27 S. W. 200; *Stephenson* v. *Ferguson*, 4 Ind. App. 230, 30 N. E.

714; *Leavenworth etc. Ry. Co.* v. *Forbes,* 37 Kan. 445, 15 Pac. 595; *Rutter* v. *Henry,* 46 Ohio St. 272, 20 N. E. 334.)  It would, indeed, be a harsh and oppressive rule which would hold one liable in damages if, under any and all circumstances and conditions, and regardless of all reasonable or strenuous efforts on his part, or the impossibility of restraining the sheep, they should break away and inflict some injury.

This brings us to the question: Was the trial court warranted in determining, as a matter of law, under the evidence, that the [4] defendants were guilty of negligence, and so instructing the jury?  A brief review, at least, of the evidence, is necessary to determine this question.  We do not attempt to give the testimony word for word as contained in the record, as that is unnecessary for present purposes; but we do give the substance of the testimony of all witnesses for the plaintiff which in our opinion is necessary to consider in determining the question now under consideration:

Witness Skogan testified: That, at the time the bucks mixed with the ewes, he was herding the ewes at Rosebud Buttes, about seven miles south of the town of Rosebud.  He first observed the bucks getting into the sheep on September 17, 1911.  He found two bucks in with his sheep, and, about a day or two afterward, another one came.  All three were killed.  On the 23d of September, 1911, about 5 o'clock in the evening, there came a bunch of 84 bucks, which he was unable to keep from mixing with and covering the ewes.  That from the time he commenced herding the ewes, in July, 1911, up to the time they commenced dropping lambs, there had not been any buck sheep with the ewes, except the ones mentioned.

Witness Williamson testified: That he was employed by plaintiff from the 4th day of January, 1912, to April 15, 1912.  That he knew the witness Skogan, and that Skogan worked for the plaintiff a portion of the time that he (Williamson) did.  That he was acquainted with the band of sheep taken by Skogan to Fromberg (being the ewes mentioned as having been mixed with

the bucks). That he knew of sheep that were at the Ball Ranch Company's ranch that dropped lambs in the winter time.

Witness Davis testified: That he was employed by the plaintiff and lived on the premises of the company; had been employed about three years. The first of the year 1912, he became foreman. That he was acquainted with witness Skogan and with the band of sheep Skogan was herding in September, 1911, at Rosebud Buttes. That plaintiff had another band about seven or eight miles southeast. It was not there until about the last of September. That Skogan's herd was divided, the old ewes from the young ones, in October. That these old ewes started to drop lambs about February 15, in all about 250. That all of these lambs died except six that he got rid of. That the minimum number of old ewes that died was 200.

Witness Williamson, recalled, testified: That he saw the dead lambs at the ranch of plaintiff in the spring of 1912. There was but one band dropping lambs. They commenced to lamb about February 15. That he saw the lambs dropped, and saw some of the ewes that dropped lambs, not all of them; counted 200 dead lambs.

Witness Bjornstad testified: That he lived on Six-Mile creek, in Custer county, and was there in the middle of September, 1911. That he was in the employ of the defendant Hendrickson, who sent him after a band of buck sheep. He was told to go the day Mr. Ball came over and told Hendrickson the bucks were over there. He went and got them. He found them in the corral at the Rosebud Buttes. Did not count the bucks. He brought them home to Hendrickson, who put them in the bunch of bucks that he had there. He had seen the bucks he brought back in this bunch before. They had been away three or four days when he went after them.

Witness A. M. Ball testified at some length. His testimony, however, is devoted mostly to the questions of proper breeding of sheep, their value, and the value of lambs. The only testimony given by this witness which can possibly have any bearing upon the question of negligence of the defendants is as follows:

"I don't know anything about any of these buck sheep being mixed with any of my sheep, only from hearsay. My men were there and had them cut out the morning I got there. I did not see the sheep when they were cut out, I got there just as the men were coming back from cutting out the sheep. It was about 9 o'clock in the morning. I did not see the buck sheep at all. I saw Mr. Hendrickson along toward noon or after noon that day. I rode up and notified him that we had found some of his bucks in our herd and that our men had cut them out and put them in a corral. Mr. Hendrickson at that time was right on section 30 near the creek. He said that he had had some trouble holding the bucks; that his dog was played out, and that he could not hold them; that he knew he was out some bucks, but how many he didn't know. He said if I would hold the bucks until he could get a man, he would go after them. I held the bucks, I and my foreman, while he went to the ranch and got a man. He got Mr. Bjornstad, the man who has just testified. Hendrickson told me that his dog played out; that he had trouble in holding them. The only reason he gave was that the dog was played out."

Without further comment, we say that a careful reading of this evidence convinces us that "different conclusions might be drawn by different men of fair, sound minds" on the question of defendants' negligence, and the matter should have gone to the jury and was not for the determination of the court. (*Anderson* v. *Northern Pac. Ry. Co.*, 34 Mont. 181, 85 Pac. 887, and cases there cited; Thompson's Commentaries on Negligence, sec. 7393.)

Instruction No. 14 given by the court is erroneous for the same reasons urged against instructions numbered 3 and 4.

Evidence of the value of the lambs which died was admitted on the trial, over the objection of appellants, and this is as-
[5] signed as error. We believe the objection should have been sustained. No recovery could be had for the lambs. This is, in fact, an action for trespass to personal property, and the measure of damages is, where the owner is wholly deprived of

such property, its market value at the time of trespass, and, under proper circumstances, interest from that time, in the discretion of the jury. The recovery for this wrong is limited to compensation, in the absence of aggravation for which punitive damages are allowable. (Sedgwick on Damages, 9th ed., secs. 432a, 433; Sutherland on Damages, 2d ed., sec. 1096; Thompson on Negligence, secs. 7242–7246; Rev. Codes, sec. 6044.) The rule is sound, for certainly the loss to plaintiff was the same whether the ewes were killed by reason of pregnancy or were stolen or shot to death. We should not feel inclined to reverse the case on the erroneous admission of testimony as to the value of the lambs, as there is some evidence in the case which might justify a verdict for $800.

The record contains many other specifications of error, which we have considered, but we deem them of little or no merit.

For the reasons above given, the judgment and order appealed from are reversed and a new trial ordered.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.