ANDERSON, RESPONDENT, *v.* NORTHERN PACIFIC RY. CO. ET AL., APPELLANTS.

(No. 2,249.)

(Submitted April 6, 1906.  Decided April 30, 1906.)

*Master and Servant—Personal Injuries—Railways—Assumption of Risk—Contributory Negligence—Instructions.*

| | |
|---|---|
| 34 | 181 |
| 34 | 284 |
| 34 | 181 |
| 35 | 236 |
| 35 | 237 |
| f36 | 105 |
| 36 | 166 |
| 34 | 181 |
| 38 | 297 |
| 34 | 181 |
| 41 | 291 |
| 34 | 181 |
| 40 | 172 |
| 40 | 225 |
| 40 | 414 |
| 40 | 529 |

Appeal—Dismissal—New Trial—Motion—Record.
  1.  Where it appears from an order denying a motion for a new trial, that two defendants joined in the motion, while the notice of appeal indicated that only one defendant made such motion, and where there is not anything in the record to show which defendant did so, the supreme court will, on its own motion, dismiss such appeal.

Appeal—Joint Appellants—Errors Considered.
  2.  On a joint appeal, errors not common to both appellants may be considered.

Joint Appeal—Errors Which will not be Considered.
  3.  On a joint appeal, one appellant will not be permitted to assume a position antagonistic to that of the other.

Appeal—Assignments not Argued—Waiver.
  4.  Assignments of error not argued or discussed by counsel on appeal will be deemed waived.

Nonsuit—What Facts Deemed Proved.
  5.  Upon a motion for a nonsuit those facts will be deemed proved which the evidence tends to prove.

Master and Servant—Personal Injuries—Knowledge of Danger—Question for Jury.
  6.  The plaintiff, employed as a brakeman on a railroad, was injured, while engaged in the performance of his duties, by being struck by a bridge erected over a spur track.  He had never been on this spur before.  The bridge was about eight feet above the track.  The platform of the gondola car on which he was standing was three and one-half or four feet above the track.  Plaintiff was a man of five feet and ten inches in height.  There were no telltales or other devices for warning employees of the railroad of their approach to the bridge.  Plaintiff was struck while endeavoring to release a defective brake.  *Held,* that the question whether plaintiff knew or ought to have known of the danger incident to riding under this bridge while standing on the platform of a car was a question for the jury; and that, therefore, a motion for nonsuit was properly overruled.

Same—Railroads—Contributory Negligence—Instructions.
  7.  An instruction, in an action for personal injuries brought by a brakeman who was struck by a low bridge while performing his duties as such, which announced the principle that the servant, with knowledge of an existing danger, may be excused from what would otherwise be contributory negligence, if it appeared that an emergency arose by reason of which, while engrossed in the performance of his duties, he forgot the danger or did not appreciate his close proximity to it,

was properly given, the testimony showing that plaintiff was injured while endeavoring to release a defective brake after the train had started, and that his attention was absorbed by his duties for the time being.

Same—Assumption of Risk.

8. *Quaere:* Is the doctrine that a servant, knowing of an existing danger, is excusable where he was injured while engrossed in the performance of his duties, by reason of an emergency which absorbs his whole attention, so that for the time being he forgets the danger or his close proximity to it, applicable against the defense of assumed risk?

Appeal—Invited Error—Instructions.

9. Where the district court at the request of appellant gave an instruction announcing an erroneous rule of law, but amended it in a particular which did not make it any more erroneous, the appellant may not complain.

Master and Servant—Railroads—Low Bridges—Duty of Master.

10. An instruction—in an action for personal injuries against a smelting company jointly with a railway company, by a brakeman who, while on cars which were being taken from the smelter over a spur track, was struck by a bridge constructed over the track and maintained by the smelting company—to the effect that if the employees of the railway company were taking out the cars from the smelter at the invitation, express or implied, of the smelting company, it owed to them the duty to keep the premises, as far as the bridge was concerned, in a reasonably safe condition, a violation of which would render it liable, states a correct rule of law.

Master and Servant—Railroads—Low Bridges—Negligence—Question for Jury—Instructions.

11. Whether the construction and maintenance of a bridge by a smelting company, jointly sued with a railway company, over a spur track so low as to cause a brakeman while performing his duties to be injured by coming in contact with it, constituted negligence on the part of the defendant smelting company, was a question for the jury, even though the bridge had a draw which could be removed and so rendered harmless; and a requested instruction charging, as a matter of law, that under such circumstances verdict should be for defendant smelting company, was properly refused.

District Courts—Requested Instructions—Refusal to Correct.

12. The district court is not bound to correct a requested instruction by striking out a sentence announcing an erroneous rule of law and then to give it as corrected; while it may do so, error cannot be predicated upon its refusal.

Master and Servant—Railroads—Duty of Master—Instructions.

13. Where, in an action for personal injuries, instructions relative to the duty of a railway company to its employees were couched in such language that any one of a number of different conclusions might have been drawn by the jury, the supreme court will not say that they selected one substantially correct and rejected those which were erroneous.

Master and Servant—Duty of Master—Railroads.

14. The duty which a railway company owes to its employees with respect to its roadway and appliances is to exercise ordinary care to furnish reasonably safe roadways and appliances, and to use ordinary care and diligence to keep them in a reasonably safe condition.

Personal Injuries—Instructions—Contributory Negligence—Knowledge of Danger.

15. An instruction, in a suit for personal injuries, that it was incumbent upon defendant to show that plaintiff, a brakeman, injured by

coming in contact with a bridge maintained over a railroad track, knew of the existence of the bridge before the defense of contributory negligence could become available, was erroneous in that, if as a reasonably prudent man he ought to have known of the danger incident to the existence of the bridge, he was chargeable with such knowledge.

Personal Injuries—Railroads—Instructions—Assumption of Risk—Knowledge of Danger.

16. To charge the jury, in a personal injury case, that the plaintiff, a brakeman, injured by coming in contact with a bridge erected over a railway track, must have had actual knowledge of the fact that the bridge was so low that he could not safely pass under it while standing on the platform of a car, before the defense of assumption of risk could be said to be established was error, since he could not recover if, as a reasonably prudent man, he ought to have known and comprehended the danger.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Harry Anderson against the Northern Pacific Railway Company and the Helena and Livingston Smelting and Reduction Company. Judgment for plaintiff. Defendants appeal. Affirmed as to defendant smelting company; reversed and new trial ordered as to defendant railway company.

*Messrs. Wallace & Donnelly,* for Appellant, Northern Pacific Ry. Co.

The motion for a nonsuit presented to the court this question: May a man, in the full possession of his faculties, of long experience in the work at which he was employed, in broad daylight, on a clear day, stand facing a trestle of the size above described, at a distance of less than fifty feet from it, walk deliberately toward it for a distance of twenty feet with nothing save it to occupy his attention, pass under and to a point one hundred feet beyond it, climb up and upon the platform of a car, from which he must inevitably be swept if he assumes and maintains an erect attitude upon it, actually take and maintain such an attitude, and then, when the inevitable happens, excuse his carelessness of his own safety by the statement that he did not know that the trestle was there? We insist that the plaintiff's mere assertion of his ignorance of that of which the simplest exercise of a single one of his senses might have

apprised him, cannot excuse him, and the case ought to have closed with the submission of the plaintiff's testimony. (Labatt on Master and Servant, p. 1020; *Ragon* v. *Toledo etc. Ry. Co.*, 97 Mich. 265, 37 Am. St. Rep. 336, 56 N. W. 612; *Gibson* v. *Erie Ry. Co.*, 63 N. Y. 450, 20 Am. Rep. 552; *Day* v. *Cleveland etc. Ry. Co.*, 137 Ind. 206, 36 N. E. 854; *Jennings* v. *Tacoma etc. Ry. Co.*, 7 Wash. 275, 34 Pac. 937; *Tuttle* v. *Detroit etc. Ry. Co.*, 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114.) That a charge that the railway company was bound to keep its track in a safe condition (Instruction No. 5), and that it was obliged to provide suitable and safe material and structures in the construction of its road and appurtenances (Instruction No. 4) is erroneous, and that a judgment must be reversed which rests on a verdict reached under such instructions are propositions which are abundantly established by the authorities. (*Hughley* v. *Wabasha*, 69 Minn. 245, 72 N. W. 78; *Nutt* v. *Southern Pac. Ry. Co.*, 25 Or. 291, 35 Pac. 653; *Allen* v. *Union Pac. Ry. Co.*, 7 Utah, 239, 26 Pac. 297; *Bertha Zinc Co.* v. *Martin*, 93 Va. 791, 22 S. E. 869, 70 L. R. A. 999; *Kranz* v. *White*, 8 Ill. App. 583; *Peoria etc. Ry. Co.* v. *Johns*, 43 Ill. App. 83; *Jones* v. *New York Cent. etc. Ry. Co.*, 22 Hun, 284; *Quinlivan* v. *Buffalo etc. Ry. Co.*, 52 App. Div. 1, 64 N. Y. Supp. 795; *Gulf etc. Ry. Co.* v. *Wells*, 81 Tex. 685, 17 S. W. 511; *International etc. Ry. Co.* v. *Williams*, 82 Tex. 342, 18 S. W. 700; *Eddy* v. *Adams* (Tex.), 18 S. W. 490; *Gulf etc. Ry. Co.* v. *Johnson*, 1 Tex. Civ. App. 103, 20 S. W. 1123; *Galveston etc. Ry. Co.* v. *Davis*, 4 Tex. Civ. App. 468, 23 S. W. 301; *Galveston etc. Ry. Co.* v. *Gormley* (Tex. Civ. App.), 27 S. W. 1051; *Anderson* v. *Michigan Ry. Co.*, 107 Mich. 591, 65 N. W. 585; *Belleville etc. Works* v. *Bender*, 69 Ill. App. 189; *Gormully etc. Mfg. Co.* v. *Olson*, 72 Ill. App. 32; *Chicago etc. Ry. Co.* v. *Garner*, 78 Ill. App. 281.) A palpably erroneous charge of this kind is not cured by a correct statement of the law in another portion of the charge. (*Fort Worth etc. Ry. Co.* v. *James* (Tex. Civ. App.), 87 S. W. 730.)

In Instructions 7 and 9 the jury are told that absolute knowledge on the part of the plaintiff of the bridge and its dangers is a condition of their finding either that the plaintiff had assumed the risk or that he was guilty of contributory negligence. This was error. (Labatt on Master and Servant, 1020, 1021; *Pennsylvania Co.* v. *Ebaugh*, 152 Ind. 531, 53 N. E. 763; *Louisville etc. Ry. Co.* v. *Shivell*, 13 Ky. Law Rep. 902, 18 S. W. 944; *Louisville etc. Ry. Co.* v. *Hall*, 91 Ala. 112, 24 Am. St. Rep. 863, 8 South. 371; *Hewitt* v. *Flint etc. Ry. Co.*, 67 Mich. 61, 34 N. W. 659; *Hill* v. *Meyer Bros. Drug Co.*, 140 Mo. 433, 41 S. W. 909; *Benjamin-Atha etc. Co.* v. *Costello*, 63 N. J. L. 27, 42 Atl. 766; *Ferguson* v. *Phoenix Cotton Mills*, 106 Tenn. 236, 61 S. W. 53; *Wells* v. *Coe*, 9 Colo. 159, 11 Pac. 50; *Klatt* v. *N. C. Foster Lumber Co.*, 92 Wis. 622, 66 N. W. 791; *Craven* v. *Smith*, 89 Wis. 119, 61 N. W. 317; *Taylor etc. Co.* v. *Hage*, 32 U. S. App. 548, 69 Fed. 581, 16 C. C. A. 339; *Union Pac. Ry. Co.* v. *Monden*, 50 Kan. 539, 31 Pac. 1002; *Haley* v. *Jump River Lumber Co.*, 81 Wis. 412, 51 N. W. 321; *Illinois Cent. Co.* v. *Sporleder*, 90 Ill. App. 590; *Muldowney* v. *Illinois Cent. Ry. Co.*, 39 Iowa, 619.)

What will excuse either an employee's failure to observe unknown dangers, or his forgetfulness of known ones, must be something in the nature of an *emergency*. (*Cummings* v. *Helena etc. Co.*, 26 Mont. 434, 68 Pac. 852; 1 Labatt on Master and Servant, secs. 350, 351; *Greenleaf* v. *Dubuque etc. Ry. Co.*, 33 Iowa, 58; *St. Louis etc. Ry. Co.* v. *Higgins*, 53 Ark. 458, 14 S. W. 653; *Baylor* v. *Delaware etc. Ry. Co.*, 40 N. J. L. 23, 29 Am. Rep. 208; *Chicago etc. Ry. Co.* v. *Donahue*, 75 Ill. 108.) Where assumption of risk as well as contributory negligence is pleaded, the master is entitled to the defense that the plaintiff *assumed the risk*, if the facts established it, even though those facts may not, in consequence of their attendant extenuating circumstances, be sufficient to charge plaintiff with contributory negligence. And where the servant sees the danger, and appreciates it and goes ahead with the performance of duties which will make it necessary for him to encounter it, he

*assumes the risk* of injury in the performance of such duties. From this standpoint, the question of negligence and contributory negligence is excluded. The whole question becomes one of contract. (Labatt on Master and Servant, sec. 281, and cases cited.)

*Messrs. McConnell & McConnell* for Appellant, Helena and Livingston Smelting and Reduction Company.

Neither defendant is liable to the plaintiff by reason of his assumption of risk of injury at this commercial spur. In the first place the plaintiff was derelict in his duty for permitting the train to start before the brake was released; in the next place he assumed the risk by virtue of his employment of all obstructions or instrumentalities used for loading upon these commercial spurs. The danger from this bridge (if danger it was) was an open and manifest one. (*Lamotte* v. *Boyce*, 105 Mich. 545, 63 N. W. 518; *Soderstrom* v. *Holland-Emery Lumber Co.*, 114 Mich. 83, 72 N. W. 13; *Louisville etc. Ry. Co.* v. *Banks*, 104 Ala. 508, 16 South. 550; *Appel* v. *Buffalo etc. Ry. Co.*, 111 N. Y. 550, 19 N. E. 93; *Chicago etc. Ry. Co.* v. *McGinnis*, 49 Neb. 649, 68 N. W. 1057.)

*Mr. T. J. Walsh,* and *Mr. R. R. Purcell,* for Respondent.

If, on a joint appeal, each appellant may separately assign error, it is evident that only those errors can be considered that are assigned in common—those that are available to both parties. (2 Cyc. 1003; *City of Lincoln* v. *Bailey* (Neb.), 99 N. W. 830; *Gordon* v. *Little,* 41 Neb. 250, 59 N. W. 783.)

Instruction No. 4 is an application to this particular case of the law as expressed by the supreme court of the United States speaking through Chief Justice Fuller in *Union Pacific Ry. Co.* v. *O'Brien,* 161 U. S. 451-457, 16 Sup. Ct. 618, 40 L. Ed. 766.

Appellants have no right to take a single phrase or sentence from the body of the instructions, and insist that it is erroneous, when it cannot be denied that the instructions, as a whole, are

correct. (*Johnson* v. *Boston etc. Min. Co.*, 16 Mont. 164, 40 Pac. 298; *St. Louis etc. Ry. Co.* v. *Needham*, 69 Fed. 823, 16 C. C. A. 457; *Sroufe* v. *Moran Bros. Co.*, 28 Wash. 381, 68 Pac. 896; *Northern Pac. Ry. Co.* v. *Mix*, 121 Fed. 476, 57 C. C. A. 592; *Baltimore etc. Ry. Co.* v. *Mackey*, 157 U. S. 72, 15 Sup. Ct. 491, 39 L. Ed. 624; *Anderson* v. *Daly Min. Co.*, 16 Utah, 28, 50 Pac. 815; *Chicago etc. Ry. Co.* v. *Linney*, 59 Fed. 45, 7 C. C. A. 656; *Diamond* v. *Planet etc. Mfg. Co.*, 97 App. Div. 43, 89 N. Y. Supp. 635. See, also, *Davis* v. *Trade Dollar C. M. Co.*, 117 Fed. 122, 54 C. C. A. 636; *Lemman* v. *City of Spokane*, 38 Wash. 98, 80 Pac. 280; *Grijalva* v. *Southern Pac. Co.*, 137 Cal. 569, 70 Pac. 622.)

It was negligence *per se* on the part of the railroad company to operate its trains under the overhead bridge. Overhead bridges, constructed so low as to catch a man in the discharge of his ordinary duties in the service of a railroad, have been condemned by text-writers and courts in language more fierce and denunciatory than the writer would think of using in a brief addressed to this court. (Beach on Contributory Negligence, 363; 4 Thompson's Commentaries on Negligence, 4315; 1 Shearman and Redfield on Negligence, 198; *Louisville etc. Ry. Co.* v. *Wright*, 115 Ind. 378, 7 Am. St. Rep. 432-448, 16 N. E. 145, 17 N. E. 584; *Louisville etc. Ry. Co.* v. *Cooley*, 20 Ky. Law Rep. 1372, 49 S. W. 339; *Atchison etc. Ry. Co.* v. *Rowan*, 55 Kan. 270, 39 Pac. 1010-1014; *Chicago etc. Ry. Co.* v. *Carpenter*, 56 Fed. 451, 5 C. C. A. 551; *Chicago etc. Ry. Co.* v. *Johnson*, 116 Ill. 206, 4 N. E. 381; *Keist* v. *Chicago etc. Ry. Co.*, 110 Iowa, 32, 81 N. W. 181-183; *Gusman* v. *Caffery etc. R. R. Co.*, 49 La. Ann. 1264, 22 South. 742.) Some contention was made at the trial that the rule announced by the authorities last cited does not apply when the overhead obstruction is on a spur or side track, that as to such tracks such obstructions are permissible, the claim being founded on some remarks made in *Phelps* v. *Chicago etc. Ry. Co.*, 122 Mich. 171, 81 N. W. 101, 84 N. W. 66. This case is commented on by Labatt in a manner calculated to impair its usefulness as a precedent.

(1 Labatt on Master and Servant, 58, note 5, p. 151.)   In the following cases the dangerous obstruction was maintained near or over a side or spur track: *Flanders* v. *Chicago etc. Ry. Co.,* 51 Minn. 193, 53 N. W. 544; *Kelleher* v. *Milwaukee etc. Ry. Co.,* 80 Wis. 584, 50 N. W. 942; *Clark* v. *St. Paul etc. Ry. Co.,* 28 Minn. 128, 9 N. W. 581; *Keist* v. *Chicago etc. Ry. Co.,* 110 Iowa, 32, 81 N. W. 181; *Allen* v. *Burlington etc. Ry. Co.,* 64 Iowa, 94, 19 N. W. 870; *Choctaw etc. Ry. Co.* v. *McDade,* 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; *Texas etc. Ry. Co.* v. *Swearingen,* 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382.

Instruction No. 8 has the sanction of courts and text-writers. (4 Thompson's Commentaries on Negligence, 4751, 4752, 4315; *Wallace* v. *Central Vt. Ry. Co.,* 138 N. Y. 302, 33 N. E. 1069; *Kane* v. *Northern Cent. Ry. Co.,* 128 U. S. 91, 9 Sup. Ct. 16, 32 L. Ed. 339; *Louisville etc. Ry. Co.* v. *Cooley,* 20 Ky. Law Rep. 1372, 49 S. W. 339; 1 Shearman and Redfield on Negligence, 199; *Maher* v. *Boston etc. Ry. Co.,* 158 Mass. 36, 32 N. E. 950.) Telltales should have been erected by the company. (*Wabash Ry. Co.* v. *McDaniels,* 107 U. S. 454, 2 Sup. Ct. 932, 27 L. Ed. 605.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

Harry Anderson, the respondent, was a freight brakeman employed by the Northern Pacific Railway Company. In September, 1903, he was injured while in the performance of his duties, and brought this action to recover damages from the railway company and from the Helena and Livingston Smelting and Reduction Company, alleging negligence on the part of the defendant smelting company in constructing and maintaining, and on the part of the railway company in permitting the construction and maintenance of, a certain bridge or trestle over the track of the railway company at the smelting company's concentrator at Corbin, in Jefferson county. The bridge or trestle was used by the smelting company to load

cars with ore and other products for shipment. It is alleged that this bridge or trestle was so low that an employee of the railway company could not pass under it while standing upon the platform of an ore car, and that neither the smelting company nor railway company erected or maintained telltales or other devices to warn employees of the railway company of the approach to such bridge or trestle. It is further alleged that this bridge or trestle was erected over a spur track operated by the railway company for the use of the smelting company; that on the day of the accident the defendant railway company operated a train on this spur track at the request of the defendant smelting company, and that, while the plaintiff was on one of the cars constituting the train, he came in contact with the timbers of the bridge or trestle, was knocked from the train, and severely injured.

The defendant railway company denies any negligence on its part; denies that the spur track is upon its right of way, but alleges that it is upon property owned entirely by the defendant smelting company. It admits, however, that the spur track was constructed by the joint efforts of the railway company and the smelting company. The plaintiff's contributory negligence and assumption of risk are also pleaded. The defendant smelting company denies any negligence on its part; alleges that the spur track was constructed in part upon ground owned by the smelting company, and in part upon the right of way of the railway company, and that while it was built by the joint efforts of the two companies, the smelting company was fully repaid by the railway company, and that the railway company owns the spur entirely. The smelting company admits that it erected the bridge or trestle, but alleges that the span of the bridge or trestle, immediately over the roadbed or railway track is constructed as a drawbridge solely for the benefit of the railway company, and that the railway company has the exclusive control of such drawbridge. It also alleges that the plaintiff's injury was caused by reason of the brake on the last of the cars of the train being out of

order through the negligence of the railway company. It also pleads the defenses of contributory negligence and assumption of risk. All the material allegations of these answers are put in issue by the replies.

The plaintiff recovered judgment, and each defendant gave its separate notice of intention to move for a new trial, prepared its separate statement, and made its separate assignments of errors. How these matters were submitted to the district court does not clearly appear. The court's order is as follows: "In this cause court this day ordered that defendants' motion for a new trial herein is denied."

The defendants gave a joint notice of appeal and only one undertaking on appeal. After reciting the appeal from the judgment, the notice of appeal reads: "And also from an order made and entered in said court and cause on the 21st day of August, 1905, overruling defendant's motion for new trial in said action."

While a motion to dismiss the pretended appeal from the order denying a new trial has not been made, it is urged that such pretended appeal cannot be considered. The order of the court would seem to indicate that the defendants joined in the motion for a new trial; while the notice of appeal in the case indicates that only one defendant made such motion, and, if that is true, there is not anything to indicate which defendant did so. We therefore, of our own motion, dismiss the pretended appeal from the order denying a new trial and will consider only the joint appeal from the judgment.

On such appeal counsel for the respondent urge that the appellants must join in their assignments of error, and that this court cannot consider alleged errors not common to both appellants. The authorities cited in support of this contention, however, are not directly in point. They are from states where the method of review is by writ of error and refer to cases where joint assignments of error were made. This question has not been before this court directly, but we have heretofore proceeded upon the assumption that proper practice might warrant the

affirmance of a judgment as to one joint appellant and its reversal as to another. (*Cook* v. *Gallatin Ry. Co.*, 28 Mont. 340, 72 Pac. 678; *City of Butte* v. *Cook*, 29 Mont. 88, 74 Pac. 67; *Capital Lumber Co.* v. *Barth*, 33 Mont. 94, 81 Pac. 994.) In the absence of any authorities directly in point to the contrary, we prefer to follow the rule heretofore adopted, or which seems to be implied by the position which this court has heretofore assumed. We, however, adopt the suggestion of counsel for respondent to this extent: That one joint appellant will not be permitted to assume a position in this court antagonistic to his other joint appellant. It was evidently one purpose of section 1721 of the Code of Civil Procedure, in permitting any aggrieved party to appeal, to enable one defeated party to urge an antagonistic attitude as against another defeated party, as well as against the successful litigant, by a separate appeal. But it would seem entirely inconsistent with proper practice to permit one of two joint appellants to assume a position antagonistic to his joint appellant. In so far as the position of either of these appellants is antagonistic to the other, it will not be considered.

The railway company assigns as errors the giving of instructions 4, 5, 7, 8, 9, 11 and 13 respectively. The defendant smelting company assigns as errors the giving of instructions 6, 8, 10 and 13 respectively. As the smelting company does not predicate error upon the giving of instructions 4, 5, 7, 9 or 11, it is presumed to be satisfied with them. Counsel for the smelting company do not discuss the assignments of error predicated upon the giving of any instructions. In their brief they say: "We will not enter into the discussion of the errors committed by the court in the instructions given to the jury, as this has been so ably done by counsel for the defendant railway company." But counsel for the railway company do not discuss the giving of instructions 6 or 10, and therefore these assignments are not discussed by anyone, and under the well-established rule of this court and other appellate courts, assignments not argued will be deemed waived. We therefore eliminate from consideration

the assignments predicated upon the giving of instructions 6 and 10.

The common errors assigned are (1) the refusal of the court to grant a nonsuit; (2) the giving of instruction No. 8; and (3) the giving of instruction No. 13.

Applying the well-recognized rule, that upon a motion for nonsuit those facts will be deemed proved which the evidence tends to prove, it appears that the plaintiff had never been over the Boulder Branch of the Northern Pacific Railway but three or four times prior to the day of this accident; that he had never been on this spur at Corbin before that day; that the smelting company had loaded four cars with concentrates, one of which cars stood immediately under the bridge or trestle, and the other three beyond it. The superintendent of the concentrator requested the train crew, of which this plaintiff was a member, to take these loaded cars from the spur for shipment to the smelter at East Helena. The locomotive was detached from the train on the main line and backed in on the spur nearly to the car beneath the bridge, the entire train crew riding. This plaintiff then stepped down from the locomotive, walked back under the bridge or trestle and, as was his duty, removed blocks from under the wheels of the cars, saw to it that the cars were coupled together, that the air was properly coupled and the angle cocks properly turned. He walked back to the last car, mounted upon the platform of that car to release the ordinary hand brake. The bridge is about eight feet or eight feet two inches above the track. The cars in use were the ordinary gondola cars, the platforms of which are from three and one-half to four feet above the track. The plaintiff is a man about five feet nine inches in height. The plaintiff testifies that he looked down in going back from the locomotive in performing the duties of his office. About the time plaintiff undertook to release the brake on the rear car, the train commenced to move, and by the time the car upon which he was standing reached the bridge, the train was moving at a rate of from eight to ten miles an hour. The brake did not respond readily to plaintiff's efforts and, while engaged in at-

tempting to release it and while his attention was absorbed in this duty, he was struck by the bridge and injured. There were no telltales or other devices for warning the employees of the railway company of their approach to this bridge, and the plaintiff testifies that he was not informed of it and knew nothing about it. There was not any evidence offered by plaintiff respecting the control of the drawbridge, except that it had never been removed before this accident, and when it was removed afterward, it was done by the employees of the smelting company and was quite a difficult undertaking. It appears that this spur was used by the railway company for general commercial purposes in addition to the business of the smelting company. The plaintiff then offered testimony showing the extent of his injuries and rested his case. Each of the defendants moved for a nonsuit, upon the ground (generally speaking) that the plaintiff had failed to make out a case sufficient to go to the jury. These motions were denied, and error is predicated upon the denial.

It is earnestly urged that, if the plaintiff did not see the bridge when he passed from the locomotive to the rear of the train, he ought to have seen it, and ought to have appreciated the fact that he must be swept from the car if he stood upon the platform while the car was being drawn under the bridge, and by the exercise of ordinary care he would have seen it and appreciated such fact, and therefore he is chargeable with such knowledge. Of course, every master has a right to expect that his servant will be alert, and will inform himself of existing conditions about the place of his employment. The master is not required to furnish the servant with eyes to see and ears to hear. It is also a rule that the servant, upon entering the service, assumes the risks and perils incident to the employment, so far as such risks and perils are open, apparent and discernible by a person of his age and capacity in the exercise of reasonable care for his own safety. But we do not think that these rules are at all inconsistent with that heretofore adopted by this court, namely: if the questions whether the servant knew or ought to have known of the danger are in dispute, and from the facts stated "different

conclusions might be drawn by different men of fair, sound minds, then the matter must go to the jury; but if only one conclusion can be reached by men of fair, sound minds, the determination is for the court.'' (*Prosser* v. *Montana Central Ry. Co.,* 17 Mont. 372, 43 Pac. 81, 30 L. R. A. 814; *McCabe* v. *Montana Central Ry. Co.,* 30 Mont. 323, 76 Pac. 701.)

The *McCabe Case* illustrates the principle involved here. In that case the plaintiff was a switchman employed in the yards at Great Falls. He had frequently had occasion to see the different switch-stands in the yards; but this court, in reversing the district court for granting a nonsuit, held that whether the plaintiff assumed the risk necessarily depended upon his knowledge or means of knowledge as to the location of switch-stand No. 2, that is, his knowledge or means of knowledge of its close proximity to the track, and that upon the plaintiff's denial of such knowledge and the circumstances appearing from the evidence, which did not present so strong a case for the plaintiff as do the facts above narrated, the motion for nonsuit should have been denied and the question of his knowledge or opportunity of knowing left to the jury.

The plaintiff was not required to carry a rule with him and measure the distance from the bridge to the platform of the car where he stood, and the mere fact that he may have noticed on the first trip which he made on this spur, if he did do so, that the bridge timbers were only about eight inches above the top of the gondola car is not sufficient to justify a court in saying, as a matter of law, that he should have appreciated the danger to himself in case he should attempt to ride upon the platform of the car while it was being drawn under the bridge. And this is not opposed to the doctrine announced in *Jennings* v. *Tacoma Ry. etc. Co.,* 7 Wash. 275, 34 Pac. 937, cited by counsel for the railway company. In that case the plaintiff permitted himself to stand between a brick wall and a passing car where the space was only three and one-half inches, but the court said: ''Had the space between ten or twelve or fourteen inches, the man might readily have been deceived and have been led into trouble.''

And so, in this case, we are not prepared to say that if the space between the platform of the car and the bridge had been but one foot or two feet, and plaintiff's duty had not required his attention away from the bridge, he might not then have been charged with knowledge of the danger, but this we do not decide. However, had he observed the bridge, which he says he did not, we are not prepared to say that he ought to have appreciated the fact that the distance between the platform of the car and the bridge was only four or four and one-half feet. We think the case presented by this plaintiff was much stronger than that in the *McCabe Case;* but the decision in the *McCabe Case* completely disposes of the contentions made by counsel for appellants. The motions for nonsuit were properly overruled.

Instruction No. 8 is as follows: "You are instructed that although you should find that the plaintiff knew of the existence of the bridge or trestle, and knew that it was so low as that he could not pass under it in safety, standing where he stood at the time he was injured, yet, if, at the time he was injured, he was engaged in discharging his duties as a brakeman, and by reason of his attention to his duties, and his absorption in their discharge, he omitted for the moment to think of the bridge, or thinking of it, did not recognize that the train had already proceeded so far as would bring him in contact with it; and you further believe from the evidence that a reasonably prudent man, under all the circumstances, might have omitted for the moment to bear in mind the danger, or to recognize that he was in such close proximity to the bridge, considering the speed at which the train was going, then the plaintiff was not negligent in forgetting, if he did forget, about the bridge, or in failing to recognize, if he did fail to recognize, how close he was being brought to it."

This instruction involves a consideration of the question: May a servant, with knowledge of an existing danger, excuse himself from what would otherwise be his contributory negligence, by saying: "I knew the danger, but for the moment I was so completely engrossed in the performance of my duties that I forgot

the danger or did not appreciate the fact that I was in close proximity to it''?

That there is a well-established rule of law respecting this question is conceded. The extent of the rule rather than its existence is the subject of controversy. It has been variously stated by various courts and text-writers, and in many instances the conclusions reached are not reconcilable. But the trend of the modern decisions is toward the rule considered more humane from the standpoint of the servant, which resolves itself into a declaration that, if the service is of such a character as to *engross* the attention of the servant, the master may not say the servant should have divided his attention between the performance of the particular duty and keeping a lookout for danger. In other words, if the servant has two duties to perform, one to do the work of his office and the other to be vigilant in looking out for danger, his failure to perform the latter will not, as a matter of law, constitute contributory negligence, where such failure results from the necessary observance and performance of the former, where such observance and performance engross his attention, if a reasonably prudent man under the circumstances would have been likely to make the same mistake. And the reason for the rule is apparent. It goes without saying that, if the servant's attention is *engrossed* by the performance of one duty, it cannot be divided between the performance of that and of another; and it would be a harsh rule indeed which would permit the master to say to his servant: ''You must perform the duties of your position, even though such performance requires your undivided attention, and at the same time you must give a portion of your attention to known dangers or suffer the consequences of an accident.''

We think the rule we have announced is supported by the decided weight of modern authority. In substance it is announced in 1 Labatt on Master and Servant, section 350. That author, after considering the inapplicability of the doctrine to defeat the plea of assumed risk, says: ''A materially different situation is presented where the fact is considered in regard to its bearing

upon the question of how far the servant's close attention to his duties tends to rebut the inference of contributory negligence. In this point of view the effect of the decisions may be summed up as follows: Where the servant failed to take such precautions as were appropriate for the purpose of protecting himself at the moment when the accident occurred, evidence that such failure was due to the fact that his attention was engrossed by his duties is always competent for the purpose of rebutting the inference of contributory negligence which might otherwise be drawn from his conduct; and if such evidence is offered, a court is very seldom justified in declaring him to have been, as a matter of law, wanting in proper care." A long list of modern authorities is cited in support of the text. And we think the author is entirely consistent too, in section 351, wherein he announces the limits of the doctrine, as follows: "To justify applying, for the servant's benefit, the doctrine stated in the last section, it must appear from the evidence that the circumstances were either such as to create a situation approaching to or constituting an emergency, or such as to exhibit the servant in the light of a person who was discharging a duty which demanded an unusual amount of attention. The effect of allowing it to operate in cases where he was merely discharging, under normal conditions, some ordinary function incident to his employment, would manifestly be to render the defense of contributory negligence little more than a merely nominal protection to the master."

Of course, if the evidence showed that the plaintiff was merely performing his ordinary duties under normal conditions, we are not ready to say (and it is not necessary for us to say in this case) that he could excuse himself by asserting that he forgot a known danger, although some of the authorities appear to go to this extent, but in this instance every requisite of the rule we have announced is fully met. The evidence is ample to show that an emergency arose. The train started before the brake was released. Plaintiff's duties required him to act promptly and with dispatch. The brake refused to respond as it should have

done, and plaintiff's attention was absorbed in attempting to perform his duty.

The facts in *Cummings* v. *Helena and Livingston Smelting and Reduction Co.*, 26 Mont. 434, 68 Pac. 852, are quite different from those in this case, and the doctrine there announced, we think, is not inconsistent with the rule just stated. In our opinion, instruction No. 8 fairly states the law. Whether this doctrine is applicable against the defense of assumed risk is not before us. It is only argued as presented by instructions 8 and 13 given, and the railway company's refused instructions 2 and 3, and these all have to do with the question of contributory negligence and not with the defense of assumed risk.

Instruction No. 13 is erroneous, but it is not subject to the attack made upon it by counsel for the railway company, and, as the smelting company relies entirely upon the argument made by the railway company, it is not open to attack at all in this case. It is not open to the particular attack made by the railway company, for the reason that it is practically the same instruction as No. 6 requested by that company. The instruction as given is as follows:

"Before the plaintiff can be excused for failing to see the tramway, if you find that a reasonable person exercising reasonable watchfulness ought to have seen it, it must appear from the evidence that his duties were claiming his attention, and therefore drawing his attention from the tramway and other visible things from the time when he first could have seen it; and if there was any reasonable period from the time that he stepped on the ground beside the engine at the gangway, while he was walking toward the tramway, during which he had no duty of the kind referred to to perform, or before his duties began, which period was reasonably sufficient to have enabled a person not engrossed in duties to have noticed the tramway, then you are instructed that the plaintiff's failure to notice it under such circumstances would be contributory negligence and would prevent his recovery in this action, unless you should also find from the evidence that, at the moment of the accident, his attention was so

far absorbed in the discharge of duties required of him at that moment that he omitted to think of the bridge.'' The court omitted an opening sentence, which did not add anything of merit, and added these words: ''Unless you should also find from the evidence that, at the moment of the accident, his attention was so far absorbed in the discharge of duties required of him at that moment that he omitted to think of the bridge,'' and added a further sentence which is not criticised.

It will be observed that, in the instruction as offered by the railway company, the rule is announced that, in order for plaintiff to excuse his failure to see the tramway, his duties must have been claiming his attention from the time when he first could have seen it. The amendment made by the court only limits this like doctrine to the particular moment of time when the plaintiff was injured, and however erroneous the instruction is, it was not made any more so by the amendment, and the railway company cannot complain that the court announces a rule of law which it itself had urged upon the court. We think there is not any difference whatever in principle between the rule embraced in the instruction as offered and the one in the amendment.

Counsel for the smelting company urge that the court erred in refusing its offered instruction No. 8, as follows:

''The court further instructs you that before you can find in favor of the plaintiff as against the smelting company, you must find that said smelting company owed a duty to the plaintiff and failed to exercise ordinary care or skill toward him, by which failure the plaintiff, without contributory negligence on his part, suffered the injury complained of. In determining this question as to whether the smelting company owed any duty to the plaintiff you will take into consideration the fact that the ·plaintiff had no contract whatever with the smelting company; that he did not sustain the relation of servant to master to the defendant smelting company, but that the plaintiff was the servant of the defendant railway company and not under the control or direction of the smelting company, and if, upon the consideration of all the facts proven in the case, you find that the defend-

ant smelting company owed no duty to the plaintiff by the violation of which the injury was caused on the part of the smelting company to the plaintiff, then your verdict should be in favor of the defendant smelting company.''

The court by instruction No. 6 (any objection to which is waived by the failure of either defendant to argue the matter) told the jury in effect that if the employees of the railway company, including the plaintiff, were taking out the cars from the concentrator at the invitation, express or implied, of the smelting company, then the smelting company did owe to such employees a duty, any violation of which would render that company liable. That this is a correct rule of law and applicable to the facts of this case can hardly be questioned. The rule is stated with the authorities in support of it, in 21 Encyclopedia of Law, second edition, 471, and Thompson on Negligence, sections 978, 979. Under the circumstances of this case, the requested instruction No. 8 could hardly have failed to mislead the jury. The court, having submitted a correct rule of law for the guidance of the jury, properly refused the instruction requested.

It is also urged by the smelting company that the court should have instructed the jury, as a matter of law, that if the bridge or trestle was built with a drawbridge, which could be removed and thereby rendered harmless, then the verdict should be in favor of the smelting company. But we think that was also properly refused. It can hardly be said that the mere fact that the bridge could be removed would, as a matter of law, absolve the smelting company from liability. It is charged with negligence in constructing and maintaining the bridge so low that it was dangerous to the employees of the railway company in discharging their duties about it. Whether the construction and maintenance of the bridge in the manner in which it was constructed and maintained constituted negligence on the part of the smelting company, we think was a question to go to the jury under proper instructions.

Counsel for the smelting company also asked the court to give an instruction numbered 6, which might have been proper had

it not contained the concluding sentence: "And if he (plaintiff) knew the bridge was there and at the moment forgot the same, this will not excuse him." Of course this last sentence is directly opposed to the doctrine announced in instruction No. 8, given by the court and approved by us, but counsel in their reply brief say: "The fact that we added to this instruction the following: 'And if he knew the bridge was there and at the moment forgot the same, this will not excuse him,' affords no excuse for not giving that portion of the charge above quoted. The court could have stricken out this portion just as he added a modification to the instruction 13 as requested by counsel for the railway company." The court, of course, might have stricken out this objectionable sentence, but it was not bound to do so, and error cannot be predicated upon its refusal.

So far as the smelting company is concerned, our attention has not been directed to any reversible error committed by the court. Upon the facts the case was properly submitted to the jury. The errors assigned which are presented by this company and which are not antagonistic to its joint appellant, have all been considered, if not discussed separately.

On behalf of the railway company it is urged that the court erred in giving instructions 4, 5, 7 and 9. Instructions 4 and 5 deal with the question of the master's duty to the servant. In No. 4 it is declared: "A railway company is bound to provide suitable and safe material and structures in the construction of its road and appurtenances, and to maintain them in a reasonably safe condition." Further on in the same instruction there is an attempt apparently made to limit or explain this sweeping statement as follows: "The railway company is not to be held as guaranteeing or warranting absolute safety under all circumstances, but is bound to exercise the care which the exigencies reasonably demand in furnishing a proper roadbed and track, and in keeping the same free from obstruction with which its servants are likely to come in contact and be injured in the ordinary discharge of their duties." In No. 5 it is said that "the defendant railway company was bound to use due care as between it and its servants,

and to keep the track on which it was operating its cars at the time the plaintiff was injured in a safe condition for the use of its servants in doing the work for which their duties devolved upon them." And further on in the same instruction it is said: "It was bound to use due care to keep them in a reasonably safe condition"; and again: "If the defendant railway company did not own or control the track, it was bound to see that it was kept in such condition as that it was reasonably safe for the employees of the railway company to do their work on and over it."

It is unfortunate that some courts, including this one, have been extremely careless in attempting to define the master's duty in this regard; but no useful purpose can be subserved in continuing the like practice after our attention has been called to the error, as is done in this instance.

It will be observed that in instruction No. 4 the jury was told that the master's duty is (1) to provide suitable and safe materials and structures, and maintain them in a reasonably safe condition; (2) to exercise the care which the exigencies reasonably demand in furnishing a proper roadbed and track, and in keeping the same free from obstructions. Was the jury to understand that this was intended to be two statements of the same rule, or the statement of two different rules, and, if the latter, which rule should control? In fact neither is a correct statement of the law. In instruction No. 5 the master's duty is again defined to be (1) to use due care as between itself and its servants; (2) to keep the track in a safe condition for doing the work required of the servant; (3) to use due care to keep the track and appliances in a reasonably safe condition; and (4) to see that the track was kept in such condition as that it was reasonably safe for the servant to do his work. Having read these instructions, the jury might properly have drawn any one of a half dozen different conclusions as to the master's duty toward the servant; but the most natural conclusion, it seems to us, for the jury to have drawn, would have been that the court was simply stating the same rule in different terms, and that, in fact, the various statements were intended to mean the

same thing.  It is asking altogether too much of this court to say that the jury selected the one statement of the rule which is substantially correct so far as it goes, and rejected the other statements of it which are erroneous.  The rule of law defining the master's duty to his servant in this respect is: The master's duty to the servant is to exercise ordinary care to furnish reasonably safe roadways and appliances, and use ordinary care and diligence to keep them in a reasonably safe condition.  (*Union Pac. Ry. Co.* v. *Jarvi*, 53 Fed. 65, 3 C. C. A. 433; 4 Thompson on Negligence, sec. 3767.)  We hardly think this court would be justified, under all the facts presented by this record, in saying that it was negligence *per se* on the part of the railway company to operate its trains under this bridge or trestle.

In its instruction No. 7 the court said: "The plaintiff is not required to prove to your satisfaction that he is not guilty of contributory negligence; the defendants must prove that he was. So likewise the plaintiff is not obliged to prove to you that he did not know of the existence of the bridge, and that it was so low that he could not perform his duties in safety.  The defendants must show that he had such knowledge."  And instruction No. 9 is as follows: "In order to establish the defense of assumed risk in this case, it is not enough that it should appear from the evidence that the plaintiff knew of the existence of the bridge. You must reach the conclusion from the evidence, not only that he knew of the existence of the bridge, but also that he knew it was so low that he could not pass under it in safety while standing on the platform of the car in the discharge of his duties, or you must find in favor of the plaintiff on this issue."

Each of these instructions is clearly erroneous.  Actual knowledge on the part of plaintiff of the existence of the danger is made the test of plaintiff's assumption of risk.  If such circumstances were shown that a reasonably prudent man ought to have known of the danger, the plaintiff was chargeable with knowledge, even though in point of fact he may not have had such knowledge.  In 4 Thompson on Negligence, section 4647, the rule is more fully stated as follows: "Negligent ignorance being in

law tantamount to knowledge, it is sufficient, to put upon the servant the disadvantage of accepting the risk, that he knew of the source of danger, or might have known of it by the exercise of that measure of care which he ought to take for his own safety under the circumstances of the particular case, which comes within the description of ordinary or reasonable care.   The true test by which to determine whether the servant assumed the risk of the particular danger as one of the ordinary risks of his employment, and whether he was guilty of contributory negligence in facing or neglecting the danger, is to consider whether, under all the surrounding conditions, he *ought* to have known and comprehended the danger, and not whether, in point of fact, he did know and comprehend it.''

We have examined the other assignments made by the railway company, but think they are without merit.

As to the defendant Helena and Livingston Smelting and Rè-duction Company, the judgment is affirmed.   For the errors in giving instructions 4, 5, 7 and 9, the judgment is reversed and a new trial ordered as to the defendant Northern Pacific Railway Company, which has specified and urged these errors.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

Petition for rehearing filed by the appellant Helena and Livingston Smelting and Reduction  Company denied June 16, 1906.